IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KIM TAYLOR,<br><br>                    Plaintiff,<br><br>     vs.<br><br>BOARD OF REGENTS FOR THE<br>UNIVERSITY OF NEBRASKA,<br><br>                    Defendant. | **8:19-CV-19**<br><br><br>**MEMORANDUM AND ORDER** |

This case comes before the Court on Defendant's Motion for Summary Judgment. Filing 80. Plaintiff, Kim Taylor, was an employee of Defendant, Board of Regents of the University of Nebraska ("BRUN"), and brought the present action alleging retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Filing 35. For the reasons stated below, BRUN's Motion for Summary Judgment, Filing 80, is granted.

## I.      BACKGROUND

Taylor was employed by BRUN as a Collections Manager for the International Quilt Study Center and Museum located on the University of Nebraska-Lincoln ("UNL") campus. Filing 85 at 23. Taylor began working as the museum's Collections Manager on October 8, 2012, and her direct supervisor was Dr. Carolyn Ducey. Filing 85 at 23. Later, BRUN hired Leslie Levy as the new director of the museum, and Taylor reported to both Ducey and Levy. Filing 85 at 23-24.

### A.  Taylor's Sexual Harassment Claim and Response from the Museum

Around June of 2013, a wealthy donor ("the donor") made improper comments about a museum employee's body. Filing 85 at 23; Filing 81-2 at 11. Taylor encouraged that employee to report the incident, but the employee did not make such a report. Filing 85 at 23; Filing 81-2 at 11.

1

On June 13, 2015, the donor sexually harassed Taylor by trying to kiss her. Filing 85 at 25; Filing 81-2 at 8-10. Taylor first reported the incident to Ducey; later, Taylor recounted the story to Levy, who reported the incident to UNL Human Resources. Filing 85 at 25; Filing 81-2 at 10-11. During Taylor's meeting with Levy, "Levy was visibly displeased that" Taylor asked Levy to file a report with Human Resources. Filing 85 at 25 "She grimaced, and there was a big sigh." Filing 81-2 at 11. Levy filed the report with chair of the department and the dean of UNL. Filing 81-3 at 7. Taylor alleges that in 2015, at the time of the harassment, Levy was negotiating a $7,000,000 donation from the donor. Filing 81-2 at 14. However, Levy asserted the museum had the funding needed by the end of June, and Taylor's report had no impact on Levy's ability to secure a donation. Filing 81-3 at 17.

The chair of the department reached out to Taylor later that month to express his anger about the donor's sexual harassment. Filing 85 at 25; Filing 81-2 at 11-12. Taylor felt "validated" by the chair's comments. Filing 81-2 at 12. In August 2015, Taylor received a letter from UNL Human Resources explaining the incident had been investigated and the donor was "warned about his conduct in an effort to ensure no similar conduct occurs in the future." Filing 81-7 at 2; Filing 81-2 at 12-13. The letter further informed Taylor that she should reach out if she felt she was subjected to retaliation resulting from her report against the donor. Filing 81-7 at 2. Taylor "felt pretty confident" after receiving the letter that her complaint was taken seriously. Filing 81-2 at 13.

### B.  Taylor Reports Retaliation

In November or December of 2015, Levy complained in a staff meeting that the donor no longer came to the museum. Filing 81-2 at 14. Taylor asked Ducey about Levy's comment, and Ducey told Taylor that she had made things difficult for Levy, which Taylor assumed meant Levy

did not support Taylor's sexual harassment claim. Filing 81-2 at 14; Filing 85 at 26. Taylor asserts this is the point at which she began to "distrust" Levy and Ducey. Filing 85 at 26.

Taylor alleges several incidents where Ducey and Levy treated her poorly. Filing 85 at 26-33. Taylor recounts in her affidavit that in a meeting around August 2016, she expressed concerns about light and bugs damaging the museum's artifacts and suggested installing a door; however, Levy cut off Taylor and Ducey did not support Taylor. Filing 85 at 26-27. Levy asserts that the museum did consider Taylor's concerns, and instead of installing a door, which would have been too expensive, other efforts were made to alleviate Taylor's concerns regarding light and bugs. Filing 81-3 at 13.

The donor visited the museum at least twice in the summer of 2016, and Taylor was not warned prior to his arrival. Filing 85 at 26. Taylor alleges the donor "ogled" her during these visits. Filing 85 at 26. Taylor asserts that Ducey knew the donor was in the museum and did not warn Taylor. Filing 85 at 26. The donor also called Taylor when he received a gift from the museum in the mail in August 2016. Filing 85 at 27; Filing 81-2 at 16.

Taylor "began to feel more retaliation" in the fall of 2016 when Levy "bullied" Taylor "by speaking to [her] in a rude manner, ignoring [her] contributions, and glaring at [her]." Filing 85 at 27. Specifically, Taylor recounted an incident in the fall of 2016 where Levy brought food into a working area where food was not allowed, and Levy snapped at Taylor when she tried to correct Levy's behavior. Filing 85 at 26. Taylor alleges that Ducey no longer sought Taylor's opinions regarding the museum collection, and Taylor felt that she should find a new job. Filing 85 at 26-27. In January 2017, Taylor "confronted" Levy regarding having "sneaked books in through Customs" by hiding them under a shipment of quilts for the museum from Japan. Filing 85 at 28-29. Taylor stated in her deposition that she was asked not to attend the annual board meeting in

3

2017 and thought she was excluded because the donor would be in attendance. Filing 81-2 at 22-23.

Taylor's annual 2016 performance evaluation with Ducey occurred in April 2017. Filing 85 at 29. Ducey asked why Taylor "seemed more reserved and withdrawn," and Taylor told Ducey she felt that Levy was bullying her at work. Filing 85 at 29. Taylor "exceed[ed] expectations" in all categories of her annual evaluation except in the categories of communication, team focus, and leadership, where she was marked "meets expectations." Filing 85 at 29; Filing 81-29 at 4-5. Following this evaluation, Ducey and Levy scheduled a meeting with Taylor to discuss Taylor's comments about Levy's behavior, which Taylor described as an "ambush," so Taylor left before the meeting began. Filing 85 at 29.

On April 24, 2017, Taylor reported her concerns of retaliation to the Equal Employment Opportunity/Affirmative Action Specialist ("the specialist") at UNL. Filing 85 at 30; Filing 81-8 at 2. Her retaliation claim was based on the donor's visits to the museum, exclusion from the upcoming annual board meeting, unfair and negative commentary on her performance evaluation, and exclusion from meetings regarding workplace decisions. Filing 81-8 at 2. At Taylor's request, the specialist did not complete an investigation and instead the matter was resolved informally. Filing 81-8 at 2; Filing 85 at 30. Taylor requested that she be notified when the donor was at the museum, that the donor be accompanied so that Taylor could avoid him, and that she be included in team meetings; Ducey and Levy agreed to these requests. Filing 81-8 at 2-3.

The museum took several actions to ensure Taylor would not be alone with the donor. Front desk employees were trained to recognize the donor and inform Taylor when he was in the museum, and Taylor was given a phone with caller ID so that she could avoid answering the phone if the donor called. Filing 81-2 at 15-16; Filing 81-12 at 1; Filing 81-13 at 1. Further, Taylor was

4

not required to attend any event where the donor would be present. Filing 81-2 at 17. The specialist informed Taylor that if she believed that the informal resolution was violated and if she continued to experience retaliation, she should contact the specialist. Filing 81-8 at 3. Taylor was satisfied with this outcome and did not contact the specialist again. Filing 81-2 at 24.

**C.  Taylor's Performance Evaluations, Interactions with Other Museum Employees, and Termination**

In Taylor's six annual performance evaluations covering the years of 2012 to 2017, she never received higher than a "meets expectations" rating in the "communication" and "team focus" categories. *See* Filing 81-25 at 2-4 (not including a "team focus" category but including a "relating to others" category), Filing 81-26 at 2-3 (not including a "team focus" category but including a "relating to others" category), Filing 81-27 at 2-4, Filing 81-28 at 4-5, Filing 81-29 at 3-5, Filing 81-30 at 2-4 (receiving a "needs improvement" rating, the lowest rating available, in the "communication" and "customer/quality focus" categories). Taylor generally received high ratings in the other categories on her performance evaluations. Filing 81-26 at 2-3, Filing 81-27 at 2-4, Filing 81-28 at 4-5, Filing 81-29 at 3-5. In 2018, during Taylor's 2017 performance evaluation, Taylor received the lowest possible rating, "needs improvement," in the "communication" and "customer focus" categories. Filing 81-30 at 4. Taylor contested the low ratings in her 2017 performance evaluation, asserting that the low ratings were based on incidents in 2018 and should not have been considered in her 2017 evaluation. Filing 85 at 33. Due to her overall positive performance evaluations, Taylor's pay was raised in 2015, 2016, and 2018. Filing 81-14, Filing 81-15, Filing 81-16.

BRUN asserts that Taylor used profanity in front of volunteers, made degrading comments to her coworkers, and generally acted unprofessionally while communicating with others, which

5

led to her lower evaluation scores for communication and, eventually, to her termination. Filing 81 at 18-19 (Defendant's brief detailing various instances where Taylor acted unprofessionally); Filing 81-20 at 2 (an email from Levy to Ducey reporting that Taylor embarrassed a volunteer by speaking to her in a "very loud, harsh voice," causing the volunteer to quit); Filing 81-24 at 4-5 (Ducey's declaration generally describing Taylor's unprofessional communication at the museum); Filing 81-31 at 2 (an email from Taylor's coworker to Ducey reporting that in October 2017, Taylor complained about a coworker to a volunteer, asking if her coworker had museum experience); Filing 81-32 at 2 (an email from Ducey to Levy reporting that Taylor raised her voice at a coworker in August 2018 in a "frustrated and confrontational communication manner"); Filing 81-33 at 2 (a report from Ducey stating that in August 2017, Taylor used a vulgarity while speaking to a volunteer); Filing 81-34 at 2 (an email from an employee to Ducey reporting that in May 2018, Taylor shouted at a volunteer).

Taylor also describes many unpleasant interactions with her coworkers, detailed below. These interactions appear unrelated to her sexual harassment or retaliation claims, except insofar as Taylor asserts her superiors, Levy and Ducey, failed to support her during these incidents. Filing 85 at 30-32.

   1.  *Interactions with the Director of Exhibitions and Human Resources Involvement*

In September 2017, Taylor "had a conflict with the Director of Exhibitions." Filing 85 at 30. Taylor confronted the Director after the Director had improperly documented items borrowed from another museum. Filing 85 at 31. The Director refused to speak with Taylor about the issue. Filing 85 at 31. Levy and Ducey intervened and told the Director not to worry about the documentation, which upset Taylor because "if policies and procedures are not followed properly, then [Taylor] cannot do [her] job properly." Filing 85 at 31.

Following this conflict, Levy, Ducey, and Taylor met with a representative of UNL Human Resources. Filing 85 at 31; Filing 81-20. Taylor asserts that in this meeting, the Human Resources representative pressured her to quit. Filing 85 at 31. A month later, in October 2017, Taylor again met with Levy, Ducey, and the same Human Resources representative, where they discussed ways that Taylor could improve her "professional behavior and communication." Filing 85 at 32; Filing 81-21 at 2. Taylor agreed that she would not say "this is not a real museum" in front of museum volunteers, guests, or employees; that she would report to Ducey regarding issues Taylor felt needed to be addressed; that she would "[b]e open to receiving feedback"; and that she would "give [her] colleagues the benefit of the doubt when situations arise that may not conform to office policy or procedure." Filing 81-21 at 2; *see also* Filing 81-2 at 32-33 (Taylor stating at her deposition that Levy's email was an accurate description of the meeting that occurred in October 2017).

### 2. *Interactions with the Operations Manager and Taylor's Termination*

Taylor and BRUN both document several unpleasant interactions between Taylor and the operations manager. Filing 81 at 20-23; Filing 85 at 28-37. First, Taylor recounts a conflict in December 2016, when the operations manager reported an inaccurate number of volunteer hours to Levy. Filing 85 at 28. Taylor does not connect this incident to her harassment claim. *See* Filing 85 at 28 (detailing her interaction with the operations manager and not alleging facts related to her harassment claim). At some point in 2018, the operations manager threw away shipping supplies that Taylor needed for her job, and Taylor asked him to inform her before discarding shipping supplies and boxes. Filing 85 at 34.

On August 15, 2018, Taylor had another confrontation with the operations manager in a staff meeting when he requested to store furniture in the collection storage area. Filing 85 at 34.

7

Taylor allegedly yelled at him about this request. Filing 81-32 at 2 (email from Ducey to Levy reporting that Taylor spoke unprofessionally to the operations manager); Filing 81-36 at 2 (email from the operations manager regarding Taylor's behavior towards him at the meeting, stating she spoke "in her scolding/angry/in your face manner"). A few days after this meeting, on August 22, 2018, Taylor saw that the operations manager had again thrown away her shipping supplies. Filing 85 at 34. Taylor confronted him at the welcome desk in front of museum visitors and a second coworker. Filing 85 at 34; Filing 81-2 at 34; Filing 81-36 at 2. The operations manager told Taylor that "it didn't matter," and he did not want to discuss the matter with Taylor. Filing 85 at 34; Filing 81-2 at 34-35. Taylor then yelled at the operations manager and left. Filing 85 at 34; Filing 81-2 at 34-35. A museum visitor expressed that she was uncomfortable and that "no one should be talked to or yelled at like that." Filing 81-22 at 2; Filing 81-36 at 2.

The museum terminated Taylor's employment on August 29, 2018, effective November 29, 2018. Filing 85 at 37. BRUN asserts Taylor was terminated because of her unprofessional communication and due to the conflict with the operations manager on August 22, 2018, and Taylor appears to agree. Filing 81-2 at 34-35 (Taylor stating in her deposition, "But I did yell at Dean after he said it doesn't matter . . . that's why I got fired"); Filing 81-3 at 15 (Levy stating in her deposition, "[T]he incident that happened on August 2018 at the front desk . . . resulted in [Taylor's] termination"); Filing 81-24 at 6 (Ducey stating in her declaration, "[Taylor]'s inability to maintain professional, respectful interactions with her colleagues resulted in problems in the workplace and eventually led to the termination of [her] at-will employment effective November 29, 2018").

Taylor filed charges of discrimination based on retaliation with both the U.S. Equal Employment Opportunity Commission ("EEOC") and the Nebraska Equal Opportunity

Commission ("NEOC") on or about August 30, 2018. Filing 35 at 5-6; Filing 81-9 at 8-10. Taylor's

charge against BRUN on the EEOC and NEOC forms reads as follows:

> On or about June 15, 2015, I was sexually harassed by the Museum's largest donor.
> I reported the harassment to upper management and to Human Resources. I was
> told the Donor was warned about his conduct. I was later told the Museum was in
> the process of negotiating a $7,000,000.00 donation from this donor and that my
> complaint had made things very difficult for the Director. After my complaint, I
> was bullied and marginalized by my immediate supervisor and Director resulting
> in a hostile working environment that lasted for years. I was omitted from meetings,
> questions and concerns I had concerning my work area were often ignored or
> unaddressed, I was told not to talk to other staff members, and my annual reviews
> progressively got worse. In or about April 2018, I was graded as 'unacceptable' in
> two areas of my annual performance review. The examples I was given to justify
> the bad review were not true. On or about August 29, 2018, I was notified that I
> was being discharged.
>
> I believe I was disciplined (negative reviews) and discharged in retaliation for
> reporting that I had been sexually harassed, in violation of Title VII of the Civil
> Rights Act of 1964, as amended.

Filing 81-9 at 10. EEOC dismissed Taylor's claim because it was "unable to conclude that the

information obtained establishes violations of the statutes." Filing 81-9 at 16.

## II.      ANALYSIS

### A.  Summary Judgment Standard

"Summary judgment is appropriate when the evidence, viewed in the light most favorable

to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled

to judgment as a matter of law." *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881,

884 (8th Cir. 2016) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is not disfavored and is

designed for every action." *Briscoe v. Cnty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012)

(internal quotation marks omitted) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043

(8th Cir. 2011) (en banc)). In reviewing a motion for summary judgment, the Court will view "the

record in the light most favorable to the nonmoving party . . . drawing all reasonable inferences in

that party's favor." *Whitney v. Guys, Inc.*, 826 F.3d 1074, 1076 (8th Cir. 2016) (citing *Hitt v. Harsco Corp.*, 356 F.3d 920, 923–24 (8th Cir. 2004)). Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Se. Mo. Hosp. v. C.R. Bard, Inc.*, 642 F.3d 608, 618 (8th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The moving party need not produce evidence showing "an absence of a genuine issue of material fact." *Johnson v. Wheeling Mach. Prods.*, 779 F.3d 514, 517 (8th Cir. 2015) (citing *Celotex*, 477 U.S. at 323). Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 596 (8th Cir. 2001) (quoting *Celotex*, 477 U.S. at 325).

In response to the moving party's showing, the nonmoving party's burden is to produce "specific facts sufficient to raise a genuine issue for trial." *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016) (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Wagner v. Gallup, Inc.*, 788 F.3d 877, 882 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1042). "[T]here must be more than 'the mere existence of some alleged factual dispute'" between the parties in order to overcome summary judgment. *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting *Vacca v. Viacom Broad. of Mo., Inc.*, 875 F.2d 1337, 1339 (8th Cir. 1989)).

**B.  Failure to Exhaust**

10

BRUN claims that Taylor cannot bring a hostile-work-environment discrimination claim because she failed to exhaust her administrative remedies per 42 U.S.C. § 2000e-5(e). Filing 81 at 33-35. Taylor appears to concede that she is not presenting a hostile-work-environment discrimination claim separate from her hostile-work-environment retaliation claim. Filing 85 at 20-21 (stating "Plaintiff did file a retaliation charge with the EEOC . . . primarily based on a hostile work environment being created after she filed her sexual harassment complaint" and not stating that Taylor filed a discrimination charge). The Court agrees.

An allegation that an employer has created a hostile work environment can potentially support two different types of claims: a discrimination claim based on the hostile work environment itself or a claim that the allegedly hostile work environment was a form of retaliation. See *Mahler v. First Dakota Title Ltd. P'ship*, 931 F.3d 799, 807 (8th Cir. 2019) (distinguishing hostile-work-environment discrimination claims and hostile-work-environment retaliation claims); *Stewart v. Ind. Sch. Dist. No. 196*, 481 F.3d 1034, 1042 (8th Cir. 2007) ("[R]etaliation claims under Title VII [can] be based on a hostile work environment . . . ." (citing *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 66 (2006))). The Court reads Taylor's Third Amended Complaint, Filing 35, as alleging a retaliatory hostile work environment and not as alleging hostile-work-environment discrimination. See Filing 35; Filing 81-9 at 10.

Taylor states that BRUN's actions were intended to punish her for reporting the donor's sexual harassment. Filing 85 at 15 (Taylor asserting that "after reporting the sexual harassment . . . [Taylor] began experiencing adverse actions against her by her supervisors"). While she does allege BRUN made her work environment more difficult by "rebuff[ing] her concerns" and failing to protect "her rights to be free of hostile treatment," Filing 85 at 20, her primary focus in her brief is the cause-and-effect relationship between her sexual harassment claim and the poor treatment

she received from Ducey and Levy. Filing 85 at 20-21 (stating Taylor's "retaliation claim was primarily based on a hostile work environment being created after she filed her sexual harassment complaint"); *see also* Filing 85 at 20 (stating that "[t]hrough the discussion of the facts, Plaintiff has clearly shown a causal relationship" between her sexual harassment claim and the poor treatment she received from Levy and Ducey). While Taylor states she brought the present action "for retaliation and hostile work environment," these claims are both tied to the "claim of sexual harassment by a donor of the museum," Filing 85 at 3, indicating Taylor's intention is to pursue a retaliatory hostile work environment claim and not a separate hostile-work-environment discrimination claim. *See* Filing 85 at 20-21 ("Plaintiff did file a retaliation charge . . . based on a hostile work environment being created after she filed her sexual harassment complaint."). Thus, the Court will review the merits of Taylor's Title VII hostile-work-environment retaliation claim and it need not reach the question of exhaustion of a separate hostile-work-environment discrimination claim. Filing 35 at 6-7.

### C. Title VII Retaliation

Taylor alleges her superiors retaliated against her for reporting sexual harassment and reporting retaliation by creating a hostile work environment and ultimately terminating her. Filing 35 at 6-7. BRUN alleges that Taylor did not experience an adverse employment action, that Taylor cannot prove a causal connection between her termination and her sexual harassment report, and that Taylor's termination was based on her poor interpersonal skills culminating in Taylor yelling at another employee in front of a museum guest. Filing 81 at 25-33. Taylor appears to allege that BRUN's nondiscriminatory reason for firing her is pretextual because her fellow employees were not treated as harshly as Taylor, demonstrating the true motivation for firing Taylor was her sexual harassment report. Filing 81 at 20 ("Plaintiff disputes the assertion of the Defendant that she cannot

12

demonstrate that BRUN's reason for terminating her was pretext. . . . Plaintiff's concerns were ignored or diminished while her coworkers with whom she had business related conflicts were never sanctioned in any manner."). Filing 35 at 6-7.

This Court grants BRUN's Motion for Summary Judgment for two reasons. First, Taylor fails to allege sufficient facts to demonstrate an adverse employment action by means of a hostile work environment. Second, while Taylor may be able to show a prima facie case based on her termination, she fails to allege facts demonstrating BRUN's nonretaliatory reason for firing her was pretextual and that her protected action was the but-for cause of her termination.

*1. Retaliation Standard*

"Title VII prohibits employers from retaliating against an employee who is engaged in a protected activity, which can be either opposing an act of discrimination made unlawful by Title VII . . . or participating in an investigation under Title VII . . . ." *Hunt v. Neb. Pub. Power Dist.*, 282 F.3d 1021, 1028 (8th Cir. 2002) (citations omitted). A plaintiff can establish retaliation by producing either direct evidence of discrimination or by means of the burden-shifting framework set forth in *McDonnell Douglas*. *Stewart*, 481 F.3d at 1042-43 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Here the parties do not argue there is direct evidence of retaliation and thus proceed to the burden-shifting analysis. *See* Filing 85 at 15-20. Under this framework, the plaintiff must first establish a prima facie case of retaliation. *Stewart*, 481 F.3d at 1043. "To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) she was engaged in a protected activity (opposition or participation); (2) she suffered an adverse employment action; and (3) the adverse action occurred because she was engaged in the protected activity." *Hunt*, 282 F.3d at 1028 (citing *Coffman v. Tracker Marine*, 141 F.3d 1241, 1245 (8th Cir. 1998)). If the plaintiff can establish this prima facie case of retaliation, the burden shifts to the

employer to demonstrate a nondiscriminatory reason for the adverse employment action. *Id.* If the employer produces a nondiscriminatory reason for the action, the burden shifts back to the plaintiff to show that the employer's proffered reason was a pretext for discrimination. *Id.*

### 2. Protected Activity

Taylor has met the first prong of her prima facie case because she participated in protected actions both when she reported the initial sexual harassment in 2015 and when she reported suspected retaliation to the specialist in 2017. *See, e.g.*, *Robinson v. Potter*, 453 F.3d 990, 994 (8th Cir. 2006) ("[F]iling of EEOC complaints constitutes a protected activity . . . ."); *Coffman*, 141 F.3d at 1245 (stating the plaintiff "engaged in statutorily protected activity by making a sexual harassment complaint"). The parties disagree, however, on whether Taylor has established the second prong, suffering an adverse employment action.

### 3. Adverse Employment Action

Taylor argues the hostile work environment BRUN created was a form of retaliation. *See* Filing 85 at 20. "[R]etaliation claims under Title VII [can] be based on a hostile work environment and need not be based solely on discrete adverse employment actions . . . ." *Stewart*, 481 F.3d at 1042 (citing *Burlington Northern*, 548 U.S. at 66). For a retaliatory hostile work environment claim, the plaintiff must show "she experienced harassment so severe or pervasive as to constitute a materially adverse action." *Mahler*, 931 F.3d at 807 (citing *Burlington Northern*, 548 U.S. at 67-70). "Reporting discriminatory behavior 'cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience.'" *Aubuchon v. Geithner*, 743 F.3d 638, 644 (8th Cir. 2014) (citing *Burlington Northern*, 548 U.S. at 68).

In *Mahler*, the Eighth Circuit affirmed a grant of summary judgment to the employer where an employee alleged a retaliatory hostile work environment but could only point to isolated

14

incidences of hostile conduct from her superior. *Mahler*, 931 F.3d at 807. The court described the hostile work environment standard as "demanding," and stated a plaintiff "must show the alleged harassment [is] so intimidating, offensive, or hostile that it poisoned the work environment." *Id.* (quoting *Blomker v. Jewell*, 831 F.3d 1051, 1057 (8th Cir. 2016)). To determine whether the environment is objectively hostile, courts look to the totality of the circumstances "including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance and whether the conduct unreasonably interfered with the employee's work performance." *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 518-19 (8th Cir. 2010) (citing *Singletary v. Mo. Dept. of Corrections*, 423 F.3d 886, 893 (8th Cir. 2005)).

Taylor lists a handful of isolated incidents over the course of three years where she felt slighted by her superiors, none of which satisfy the Eighth Circuit's demanding standard set forth above. The totality of circumstances demonstrates that the alleged poor treatment Taylor received was infrequent, not severe, and not physically threatening or humiliating. *See Anderson*, 606 F.3d at 518-19 (describing factors to consider in determining whether an employer's conduct constitutes a hostile work environment). Taylor claims she was unable to do her job as a result of Ducey and Levy's actions. Filing 85 at 9 ("Plaintiff does contend that her supervisors and other employees continued to impair her ability to do her job."). However, this allegation fails in light of the isolated nature of the supposedly adverse actions and the fact Taylor received overall favorable employment evaluations both before and after her protected activities. Filing 81-26, Filing 81-27, Filing 81-28, Filing 81-29, Filing 81-30. Taylor's allegations regarding her hostile work environment reflect only the "petty slights or minor annoyances that often take place at work and that all employees experience." *Aubuchon*, 743 F.3d at 644 (citing *Burlington Northern*, 548 U.S.

at 68). Accordingly, Taylor cannot demonstrate an adverse employment action based on a hostile work environment serving as retaliation.

While Taylor's hostile-work-environment claim fails to satisfy the second prong of a retaliation claim, her termination, which occurred after her protected actions, *is* an adverse employment action. *See Clegg v. Ark. Dept. of Correction*, 496 F.3d 922, 926 (8th Cir. 2007) (including termination as an example of an adverse employment action (quoting *Higgins v. Gonzales*, 481 F.3d 578, 584 (8th Cir. 2007))). Thus, the Court proceeds to analyze whether the adverse action (Taylor's termination) "occurred because she was engaged in the protected activity." *Hunt*, 282 F.3d at 1028.

*4. Nexus*

Under the third prong of the test for retaliation, Taylor must demonstrate that the adverse employment action was because of her reporting harassment and retaliation. "[I]f an employer has articulated a legitimate reason for its actions, it is permissible for courts to presume the existence of a prima facie case and move directly to the issue of pretext and the determinative issue of causation. . . ." *Stewart*, 481 F.3d at 1043. Here, BRUN has asserted that Taylor's "inappropriate behavior, including unprofessional, disrespectful conduct and an inability to get along with others" was the primary reason for her dismissal, culminating in an event where Taylor "yelled at a Museum employee in the presence of a Museum visitor." Filing 81 at 31. BRUN's asserted reasons are legitimate and non-retaliatory. *See Kempf v. Hennepin Cnty.*, 987 F.3d 1192, 1196 (8th Cir. 2021) (describing abrasive, disrespectful, and unprofessional conduct as "legitimate, non-retaliatory reasons" for termination).

Taylor must therefore demonstrate that her termination was caused by retaliation. *See Stewart*, 481 F.3d at 1046 (dismissing the plaintiff's claim at the summary judgment stage because

the plaintiff "failed to generate a jury question as to causation"). "The plaintiff's ultimate burden in a Title VII retaliation case is to prove an impermissible retaliatory motive was the 'but-for cause' of the adverse employment action." *Donathan v. Oakley Grain*, 861 F.3d 735, 739 (8th Cir. 2017) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013)). Further, Taylor has the burden to "muster[] sufficient evidence of pretext." *Bharadwaj v. Mid Dakota Clinic*, 954 F.3d 1130, 1135 (8th Cir. 2020).

The length of time, three years, between Taylor's initial sexual harassment claim and her termination undercuts her causation argument. *See EEOC v. Kohler Co.*, 335 F.3d 766, 774 (8th Cir. 2003) ("The further in proximity the decision to terminate is from the protected activity, the less suspect the decision to terminate becomes." (citing *Kipp v. Mo. Hwy. and Transp. Comm'n*, 280 F.3d 893 (8th Cir. 2002))). Likewise, the fact a year passed between Taylor's retaliation claim and her termination also means she cannot demonstrate the temporal proximity that would prove a causal relationship between such protected activity and her termination. *Id.* Taylor seems to rely on Ducey's comment that Taylor "made things difficult" for Levy by reporting sexual harassment to establish causation. *See* Filing 85 at 3. However, this comment was made in 2015, three years before Taylor was eventually terminated, and Taylor received favorable employment evaluations and a raise following this comment. Filing 85 at 26. Taylor has not provided sufficient evidence that her protected activities in 2015 and 2017 were the "but-for" cause of her termination in 2018. *Donathan*, 861 F.3d at 739 (quoting *Univ. of Tex. Sw. Med. Ctr.*, 570 U.S. at 352).

Taylor appears to argue BRUN's reason for her termination is pretextual because employees with whom Taylor had conflicts "were never sanctioned in any manner" and were given more favorable treatment, implying the true reason for Taylor's supervisors' actions was retaliation for her sexual harassment claim. Filing 85 at 20. "Others-were-treated-better evidence" can be

17

used to show pretext, but Taylor must put on evidence that others "engaged in the same conduct without any mitigating or distinguishing circumstances." *Bharadwaj*, 954 F.3d at 1135 (citing *Lindeman v. Saint Luke's Hosp.*, 899 F.3d 603, 606 (8th Cir. 2018)). Taylor must show that she and her coworkers "were similarly situated in all relevant respects." *Lindeman*, 899 F.3d at 606 (quoting *Ryan v. Capital Contractors, Inc.*, 679 F.3d 772, 777 (8th Cir. 2012)). Taylor must show the coworkers had comparable disciplinary histories, dealt with the same supervisor, were subject to the same standards, and engaged in the same conduct she did without any mitigating or distinguishing circumstances. *Id.* (collecting cases).

Taylor does not allege nor provide any evidence which would show the coworkers with whom she had conflicts "were similarly situated in all relevant respects." *Id.* Taylor asserts that her coworkers treated her unprofessionally, but she does not provide any facts or evidence to show that her coworkers had the same disciplinary record, were subject to the same supervisor or the same standard, or that they engaged in the same conduct. *See* Filing 85 at 28-34 (detailing instances of unprofessional conduct with other employees, but not alleging her coworkers were similarly situated). Even viewing the evidence in the light most favorable to Taylor, she fails to provide any basis for a jury to conclude that BRUN's asserted reason for firing her was pretextual. *See Stewart*, 481 F.3d at 1043 (stating a plaintiff "must present sufficient evidence to create a jury question as to whether these reasons were merely pretexts to hide an impermissible, retaliatory motive").

Taylor has not presented sufficient evidence to create a material question of fact as to whether her termination was motivated by retaliation rather than Taylor's multiple instances of unprofessional conduct. For these reasons, BRUN is entitled to summary judgment.

### III.   CONCLUSION

For the reasons stated above, BRUN's Motion for Summary Judgment, Filing 80, is granted.

IT IS ORDERED:

1.   Defendant's Motion for Summary Judgment, Filing 80, is granted; and

2.   A separate Judgment will be entered.

Dated this 5th day of August, 2021.

BY THE COURT:

Brian C. Buescher
United States District Judge